UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| FRED SILVER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-CV-00064-NCC |
| | ) | |
| SCOTT WEBER,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner's Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus by a Person in State Custody (Doc. 1).  The State has responded (Doc. 13) and

Petitioner has filed a reply (Doc. 18).[2]  The parties have consented to the jurisdiction of the

undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 6).  After

reviewing the case, the Court has determined that Petitioner is not entitled to relief.  As a result,

the Court will **DENY** the Petition and **DISMISS** the case.

## I.  PROCEDURAL HISTORY

On September 6, 2012, Petitioner was found guilty by a jury in the Circuit Court of St.

Louis City, Missouri of attempted forcible sodomy (Count I), kidnapping (Count III), and

second-degree child molestation (Count IV) (Doc. 13-4 at 7).  On May 16, 2013, the Circuit

---

[1] Petitioner is currently incarcerated at the Moberly Correctional Center in Moberly, Missouri.
*See Missouri Dept' Corr. Offender Search*, https://web.mo.gov/doc/offSearchWeb/offender
InfoAction.do (last visited June 10, 2020).  Scott Weber is the Warden and proper party
respondent.  *See* 28 U.S.C. § 2254, Rule 2(a).

[2] The reply brief filed on behalf of Petitioner by counsel exceeds the page limitation of fifteen
pages established by local rule and raises for the first time new matters or substantially expands
upon brief mentions of issues raised in the original Petition such that the Court could choose not
to address these matters.  *See* E.D. Mo. L.R. 4.01(D).  However, in an abundance of caution, the
Court will address these issues.

Court sentenced Petitioner to ten years imprisonment on the attempted forcible sodomy charge to run consecutively with five years' imprisonment on the kidnapping charge and to run concurrently with one-year imprisonment on the child molestation charge (*Id.*).  Petitioner appealed the judgment, raising one claim:

> (1) The trial court erred in overruling Petitioner's motion for judgment of acquittal at the close of all the evidence and in entering judgment and sentence because the State did not prove beyond a reasonable double that Petitioner forced his hand into Victim's skort as to try to touch Victim's genitals because Victim only testified that Petitioner tried to place his hands down the front of her skort, which would have constituted attempted statutory sodomy in the second degree.

(Doc. 13-2).  On December 9, 2014, the Missouri Court of Appeals affirmed Petitioner's conviction and sentence on direct appeal (*Id.*; *State v. Silver,* 456 S.W.3d 860 (Mo. Ct. App. 2014)).

Petitioner filed a premature *pro se* motion for post-conviction relief on September 19, 2013 (Doc. 13-6 at 8).  On April 30, 2015, counsel untimely filed on Petitioner's behalf an amended motion raising one claim:

> (1) Petitioner was denied effective assistance of counsel when his trial counsel improperly advised him that it really did not matter if Petitioner went to trial and was convicted because Petitioner would receive the exact same sentence after a jury trial conviction that he would have received if he were to plead guilty.

(*Id.* at 9-28).  The motion court denied Petitioner's amended motion, without an evidentiary hearing as untimely (*Id.* at 30-35).  On appeal, the Missouri Court of Appeals remanded the action for an abandonment hearing due to the untimely filing of the amended motion.  *Silver v. State*, 477 S.W.3d 697 (Mo. Ct. App. 2015).  The motion court denied the amended motion for a second time, without an evidentiary hearing (Doc. 13-6 at 29).  On August 23, 2016, the Missouri Court of Appeals for the Eastern District affirmed the motion court's denial of the motion (*Id.*; *Silver v. State*, 504 S.W.3d 96 (Mo. Ct. App. 2016)).  The Missouri Court of

Appeals' Mandate issued on September 16, 2016.

On September 18, 2017, Petitioner filed his Petition under 28 U.S.C. § 2254 for Writ of

Habeas Corpus by a Person in State Custody raising the following 3 grounds:

> 1) The trial court erred by overruling Petitioner's motion for judgment of acquittal because the evidence was insufficient to demonstrate that he attempted to commit forcible sodomy;
>
> 2) Ineffective assistance of trial counsel for improperly advising Petitioner that he would receive the same sentence regardless whether he entered a guilty plea or was convicted after trail; and
>
> 3) Ineffective assistance of trial counsel for acquiescing to the trial court sustaining the State's reverse-*Batson* challenge to the defense's peremptory strike of a juror without objections or argument.

(Doc. 1).

## II.  FATUAL BACKGROUND

The Missouri Court of Appeals summarized the underlying facts of Petitioner's case as

follows:[3]

On August 31, 2010, D.S. (Victim) was 14 years old and in the ninth grade at Gateway Institute of Technology.  Myah Silver, Petitioner's[4] 14-year-old daughter was friends with Victim.  The girls were in the same grade at school and played basketball together.  Victim had met Myah's parents and knew Petitioner was Myah's father.

Victim lived south of Gateway and usually took the bus home from school.  On August 31, 2010, Victim received a text message from Myah's phone stating, "Did you want a ride home, because we [are] going that way."  Victim replied, "Yes."

When school ended at 2:07 p.m., Victim went to the front of the school expecting to meet Myah to get a ride home.  When she got there, Petitioner was waiting for her but Myah was not there.  Petitioner was on the phone, seemingly speaking to Myah.  Petitioner pointed toward Kingshighway and told Victim they were going to pick up Myah.  Victim got into Petitioner's

---

[3] The state court's factual findings are presumed to be correct.  28 U.S.C. § 2254(e)(1). Petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.  *Id.*  Petitioner does not do so here but instead adopts these facts in his petition. Indeed, both parties cite to and adopt the appellate court's version of the facts.  *See* Doc. 1 at 3-5; Doc. 13 at 3-6.

[4] On direct appeal, the Missouri Court of Appeals referred to Silver as "Appellant."  The Court replaced the references with "Petitioner" for the sake of consistency.

truck, at this point unconcerned because she knew Myah usually took the bus to MetroLink. From Kingshighway, Petitioner turned onto Magnolia and then into Tower Grove Park; Victim did not see Myah.  Petitioner stopped in the park and told Victim he had to do something. Petitioner walked around to the passenger side of the truck and told Victim to get out.  Victim did not know what was happening and grabbed her school bag from the truck.  When Petitioner told her that she did not need her bag, Victim started to walk away from him.  Victim got only a couple of steps away when Petitioner grabbed her and pulled her into the truck.  Victim testified she was scared, she did not want to go with Petitioner, and she wanted to get away from him.

Inside the truck, Petitioner tried to touch Victim but she struggled with him to prevent it. Victim testified that Petitioner "was trying to place his hand down the front" of her skort, and she was "struggling with him so he wasn't able to get his hand down there[.]"  Petitioner also tried to force Victim's hand to touch his "private," and, after she "struggled to get [her hand] from him[,]" she was able to do so.  Petitioner tried to kiss her on the mouth but she turned her head. Petitioner got his hand under her shirt and touched her breasts.  Victim testified she did not think about screaming or yelling; that she was "just struggling, fighting[.]"  Victim testified she did not want to be pulled into the truck and she did not give him permission to engage in secual activity with her.

Anthony Acton (Acton) testified that around 2:15 or 2:30 p.m. on August 31, 2010, he was sitting in Tower Grove Park with his girlfriend.  Acton saw a man grab a girl from behind and take her to a vehicle.  Acton walked closer to the vehicle to investigate and saw the girl resisting as the man forced himself on the girl trying to kiss her.  Acton flagged down a police officer in the park and directed her to the truck.

Police Officer Sandy Lentz testified that around 2:30 p.m. on August 31, 2010, she was in Tower Grove Park eating her lunch.  She was sitting in her marked vehicle when Acton approached her and told her he saw an older man force a young girl into a truck and was touching her.  Officer Lentz pulled alongside the passenger side of the truck.  The door was open and two legs were hanging outside of the truck.  Petitioner was lying on his back with Victim on top of him, facing away from Officer Lentz.  Victim's shirt was pulled up and the sides of her breasts were exposed.  Petitioner's hands went over the sides of the Victim's breasts, came down the sides of her body and then came to rest on her buttocks.

Officer Lentz said, "Hey, that's enough of that, you guys are in a public park," and ordered Victim to get off of Petitioner.  Once Petitioner and Victim exited the vehicle, Officer Lentz asked Victim how old she was and Petitioner stated Victim was 18 years old and a friend of his.  Officer Lentz turned Victim towards her and saw that Victim was visibly shaken and trembling.  Officer Lentz again asked Victim how old she was and Petitioner repeated that she was 18 years old.  Officer Lentz asked Victim if she knew who Petitioner was and Petitioner interrupted, saying Victim knew his name was Fred.  When Victim began collecting her things into a book bag, Officer Lentz asked Victim if she could look through it, wherein Officer Lentz found an emergency school contact sheet.  Officer Lentz then interviewed Victim and learned what had happened.  Doc. 13-5; *State,* 456 S.W.3d 860.

4

## III.  DISCUSSION

In the habeas setting, a federal court is bound by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, to exercise only "limited and deferential review" of underlying state court decisions.  *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407-08.  Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.  28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

### A. Procedural Default

Petitioner's Ground 3 is procedurally defaulted and may not give rise to federal habeas relief.  To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair

opportunity to apply controlling legal principles to the facts bearing on the claim.  *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003).  A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition.  *Id.* at 1021.  Claims that have not been fairly presented to the state courts are procedurally defaulted.  *Id.* at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)).  Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. *Id.*  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner concedes he failed to raise Ground 3 before the state courts.  In his reply brief, Petitioner argues that his post-conviction counsel's failure to raise this claim establishes cause for the default under *Martinez v. Ryan*.[5]  The Supreme Court created a "narrow exception" and held in *Martinez v. Ryan* that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. 1, 17 (2012).  In order to show cause for his procedural default under *Martinez*, Petitioner must show that his post-conviction counsel was ineffective under *Strickland* and that the underlying ineffective-assistance-of-counsel claim is substantial.  For the following reasons, the Court finds that *Martinez* does not apply in this instance.

---

[5] Although Petitioner briefly referenced *Martinez* in his initial brief, Petitioner largely raises this argument for the first time in his reply (*See* Doc. 1 at 16).

First, the Court finds that post-conviction counsel did not provide Petitioner with ineffective assistance of counsel.  In this case, while post-conviction counsel filed an untimely amended motion and the appellate court reversed and remanded the action in light of this error, the motion court subsequently granted leave for the untimely filing of the amended motion and considered it on the merits (*See* Doc. 13-6 at 4).  Petitioner does not raise an issue regarding the untimely filing but, instead, asserts that he can demonstrate cause and prejudice to overcome the procedural bar because motion counsel was ineffective in failing to raise Ground 3 in the amended motion (Doc. 18 at 20).  Petitioner asserts that an evidentiary hearing is necessary to fully develop the facts regarding whether postconviction counsel was ineffective in failing to raise this claim in the amended petition (*Id.* at 21).  Petitioner further asserts that "[c]ounsel believes that postconviction counsel would admit that he had no reason for not pleading this claim" (*Id.*).  Aside from this general assertion, Petitioner makes no argument about how the omission of this claim satisfies the *Strickland* standard.  *Reed v. Norman*, No. 4:18-CV-1663-RWS, 2019 WL 6698628, at *3 (E.D. Mo. Dec. 9, 2019).  The presumption of effective assistance of counsel can generally only be overcome when the ignored issues are clearly stronger than those presented.  *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006).  Upon review of the record and addressed in more detail below, the Court finds that post-conviction counsel determined that the claim presented in the amended motion was the most meritorious and one that could be supported.  Therefore, "applying a heavy measure of deference to counsel's judgments," post-conviction counsel's decision not to include Ground 3 in the amended motion "falls within the wide range of reasonable professional assistance" under *Strickland*'s deferential standards.  *See Strickland v. Washington*, 466 U.S. 668, 689 (1984); *see also Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Murray v. Carrier*, 477 U.S.

478, 486 (1986)) (a failure to raise a claim "'despite recognizing it, does not constitute cause for a procedural default.'").

Second, even if the Court were to find that post-conviction counsel provided ineffective assistance, the default may be excused only if the eliminated ground of ineffective assistance of trial counsel was "substantial," "which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. *See also Hogan v. Kelley*, 826 F.3d 1025, 1028 (8th Cir. 2016). The Court does not find that to be the case here.

In considering whether the ineffective assistance of trial counsel claim alleged in Ground 3 is substantial, the Court must evaluate the claims under the *Strickland* standard. *See Id.*; *Dansby v. Hobbs*, 766 F.3d 809, 834-36 (8th Cir. 2014). Therefore, for an ineffective assistance of counsel claim to be substantial, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." *Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995) (citing *Strickland*, 466 U.S. at 687). The "performance" prong of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. To overcome this presumption, a petitioner must prove that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 697. To do so, a petitioner must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 669. The

court is not required to address both components of the effective assistance of counsel inquiry if a petitioner makes an insufficient showing on one component.  *Id.* at 697.

Petitioner argues in Ground 3 that trial counsel was ineffective for acquiescing to the trial court sustaining the State's reverse-*Batson* challenge to the defense's peremptory strike of a juror, Elizabeth Hough ("Hough"), without objections or argument.  In particular, Petitioner argues that the State failed to make a prima facie case under *Batson* of discriminatory peremptory challenges and the trial court erred when it proceeded to the second step of *Batson,* requiring defense counsel to provide race-neutral reasons for the strike (Doc. 1 at 15).  Petitioner alternatively asserts that, regardless, defense counsel's facially neutral, non-pretextual reason was sufficient and that the trial court failed to make an explicit finding that the reason was pretextual when he said that he did not agree with defense counsel's impression (*Id.* at 16).  Thus, Petitioner argues that trial counsel erred when he failed to object to or otherwise argue that the trial court improperly applied *Batson*.

The use of peremptory strikes of venirepersons on the basis of race is unconstitutional.  *Batson v. Kentucky*, 476 U.S. 79, 106 (1986).  Under *Batson*, a defendant must first make a prima facie showing that a peremptory challenge has been exercised on the basis of race.  *Batson*, 476 U.S. at 93-94.  Second, once the prima facie case is made, the burden shifts to the state to tender a race-neutral explanation for the challenged strike.  *Id.* at 97.  Third, after the state provides its race-neutral explanation, the trial court then makes the factual determination of whether the defendant has demonstrated that the reasons given are pretextual and that the strike is the product of purposeful discrimination.  *Id.* at 98.  At this stage, the trial court can consider the persuasiveness and plausibility of the reasons given by the party making the strike in determining the "genuineness" of the reasons.  *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per

curiam).  This determination is based on the totality of the facts.  *Hernandez v. New York*, 500

U.S. 352, 363 (1991).  Because this determination includes issues of credibility, the reviewing

court should give great deference to the findings of the trial court and should reverse only if

clearly erroneous.  *Id.* at 364-69; *Batson*, 476 U.S. at 98 n.21.  The prohibition includes "race

based challenges made by defense counsel because the exercise of a racially motivated

peremptory challenge in a criminal case by any party is state action which violates the United

States Constitution."  *United States v. Lee*, 715 F.3d 215, 218 (8th Cir. 2013) (citing *Georgia v.

McCollum*, 505 U.S. 42, 54-55 (1992)).

Here, defense counsel sought to peremptorily strike six Caucasian venire persons,

including Hough, and one black alternate juror (Doc. 13-1 at 247).  In response, the State raised a

*Batson* challenge as to the striking of five of the six strikes of venire members as all of these

preemptory strikes were of Caucasians venire members (*Id.* at 247-48).  The prosecutor stated, "I

don't believe the defense can state a race neutral reason for those strikes" (*Id.* at 248).  After

defense counsel stated race-neutral reasons, the State withdrew its objection to one of the venire

members, defense counsel withdrew his challenge to one other, and the trial court overruled the

State's *Batson* challenge to two more (*Id.* at 248-52).  Regarding Hough, however, defense

counsel argued that, he "didn't believe she would be - - attentive and would be able to listen in

an unbiased fashion with regard to the witnesses and/or the testimony" (*Id.* at 249).  In response,

the State argued, "I think that's [pretexual]," and stated, "she seemed alert and attentive and

responsive when she was questioned" (*Id.*).  The trial court sustained the State's *Batson*

challenge of Hough (*Id.*).  Defense counsel did not object to the court's ruling or present any

further argument regarding the matter.  Hough was seated as a juror (*Id.* at 252-53).  The jury

came to a guilty verdict after less than an hour of deliberation (*Id.* at 402-03).  Trial counsel did

not raise the issue in the motion for new trial (*See* Doc. 13-4 at 72-78).

The Court finds Petitioner cannot establish that trial counsel's representation fell below

an objective standard of reasonableness or that he was prejudiced by counsel's decision.  First,

trial counsel's alleged failure to further object or raise additional argument after the trial court's

*Batson* determination is not constitutionally deficient assistance of counsel.  Upon review of the

interaction, it is not clear that counsel could have appropriately raised additional argument

beyond that which was already offered.  "The court does not 'second-guess' trial strategy or rely

on the benefit of hindsight and the attorney's conduct must fall below an objective standard of

reasonableness to be found ineffective." *Williams v. United States*, 452 F.3d 1009, 1013 (8th

Cir. 2006) (internal citation omitted).

Second, even assuming that the failure to object to or provide additional argument after

the trial court's ruling constituted constitutionally deficient assistance of counsel, the Court finds

that Petitioner was not prejudiced by counsel's performance.  Petitioner asserts he was

prejudiced by counsel's purported failure when Hough served on the jury because, but for

counsel's failure to properly argue and object to the trial court sustaining the State's reverse-

*Batson* challenge of Hough, "there is a reasonable probability that the outcome of the trial would

have been different" (Doc. 1 at 16).  In so arguing, Petitioner suggests that Hough found him

guilty merely on the basis of her race.  As well-stated by the Missouri Supreme Court, "[t]his

allegation is to engage, at best, in mere speculation and, at worst, in the stereotyping that *Batson*

and its progeny strive to prevent." *Johnson v. State*, 406 S.W.3d 892, 908 (Mo. 2013) (quotation

omitted).  Petitioner also argues that he would present evidence of prejudice at an evidentiary

hearing (Doc. 18 at 21).  However, Petitioner does not suggest what that evidence would be nor

explains why it could not have been previously uncovered.  28 U.S.C. § 2254(e)(2).  Regardless, Petitioner has failed to allege any potential bias or other potential disqualification on the part of juror Hough indicating that but for her role on the jury the outcome at trial would have been different.  *United States v. Kehoe*, 712 F.3d 1251, 1254 (8th Cir. 2013); *Young v. Bowersox*, 161 F.3d 1159, 1161 (8th Cir. 1998).

Because Petitioner has been unable to establish any substantial ineffective assistance claim in Ground 3, post-conviction counsel was not ineffective for failing to raise this claim, and Petitioner therefore cannot show cause under *Martinez* to excuse his procedural default.  *Dansby v. Hobb*s, 766 F.3d 809, 834 (8th Cir. 2014).  As a result, the Court will deny Ground 3 as procedurally defaulted.

**B. Substantial Evidence**

Next, Petitioner asserts that the trial court erred by overruling Petitioner's motion for judgment of acquittal because the evidence was insufficient to demonstrate that he attempted to commit forcible sodomy (Doc. 1 at 6-8).  Specifically, Petitioner asserts that the evidence presented at trial was not sufficient to support the jury's verdict because the State did not prove beyond a reasonable doubt that Petitioner "forced his hand" into the Victim's skort so as to try and touch the Victim's genitals (*Id.* at 7).  Petitioner further contends that because the State presented no evidence showing that Petitioner forced his hand into the Victim's skort, that, at best, the State's evidence was sufficient to establish attempted statutory sodomy in the second degree (*Id.*).  Petitioner therefore asserts that the appellate court's determination is an unreasonable application of federal law as well as an unreasonable determination of the facts in the record (*Id.* at 8).

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is . . . whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 339 n.16.  Under Missouri law, "[a] person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense.  A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."  Mo. Rev. Stat. § 564.011.1 (effective to Dec. 31, 2016) (emphasis omitted).

"A person commits the offense of forcible sodomy if such a person has deviate sexual intercourse with another person by the use of forcible compulsion."  Mo. Rev. Stat. § 566.060.1 (effective Aug. 28, 2009 to Aug. 27, 2013).  "Deviate sexual intercourse" is defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim."  Mo. Rev. Stat. § 566.010(1)(effective to Dec. 31, 2016).  "'Forcible compulsion' means either: (a) Physical force that overcomes reasonable resistance; or (b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person."  Mo. Rev. Stat. 556.061(12) (effective Aug. 28, 2008 to July 8, 2013).

The relevant specific facts are as follow.  On direct examination, the Victim testified:

Q: What happened after he pulled you into the truck . . .?

Victim (V): He started trying to touch, but I was trying to - - you know, to avoid it by struggling with him.

Q: Okay . . . let's talk about various things.  What happened with respect to - - what happened with respect to your skort?  What, if anything, did the defendant do?

V: He was trying to place his hand down the front.

Q: And what did you do as he was trying to place his hand down the front of your skort?

A: Struggling with him so he wasn't able to get his hand down there, so he –

(Doc. 13-1 at 341).  On redirect, the Victim further testified:

Q: When the defendant was trying to force his hand into your skirt – skort, did you understand that to be sexual activity?

V: Yes.

(*Id.* at 355).  At the close of the State's evidence and at the close of all evidence, Petitioner made oral motions for judgment of acquittal (*Id.* at 359-60, 366).  The trial court denied these motions (*Id.* at 360, 366).

The jury was subsequently instructed in Instruction 5 of the elements of attempted forcible sodomy.  In relevant part, the first element of Instruction 5 read: "if you find and believe from the evidence beyond a reasonable doubt: First, that on or about August 31, 2010, in the City of St. Louis, State of Missouri, [Petitioner] forced his hand into [Victim's] skort so as to try to touch [Victim's] genitals" (Doc. 13-4 at 42).  The jury returned a guilty verdict on this Count (Doc. 13-1 at 402-03).  In his Motion for New Trial, Petitioner argued that several instructions were not fair or accurate statements of the evidence, including Instruction 5 (Doc. 13-4 at 72-74).  Petitioner filed a second, nearly identical motion for new trial, just two months later (*Id.* at 83-89).  Neither the record on appeal nor the trial court docket indicate that there was a ruling on either of these motions.

On direct appeal, Petitioner argued that the trial court erred in overruling Petitioner's motion for judgment of acquittal at the close of all the evidence and in entering judgment and sentence because the State did not prove beyond a reasonable double that Petitioner forced his hand into Victim's skort as to try to touch Victim's genitals because Victim only testified that Petitioner tried to place his hands down the front of her skort, which would have constituted attempted statutory sodomy in the second degree (Doc. 13-2).  Petitioner additionally asserted that the evidence presented at trial was not sufficient to support the jury's verdict of attempted forcible sodomy based on Instruction 5 because the State did not prove beyond a reasonable double that Petitioner "forced his hand into [Victim's] skort so as to try to touch [Victim's] genital" (*Id.* at 11).  The appellate court denied Petitioner's point and affirmed the judgment of the trial court (Doc. 13-5).  Of note, the appellate court did not address Instruction 5.

The appellate court's decision is not contrary to or an unreasonable application of federal law nor is it an unreasonable determination of the facts.  Although the appellate court did not cite *Jackson* directly, applying analogous state law, the appellate court considered whether sufficient evidence existed from which a reasonable trier of fact could find beyond a reasonable doubt that Petitioner committed attempted forcible sodomy.  In so doing, the Court found that "[Petitioner's] act of trying to force his hand down the front of Victim's skort was a substantial step toward the commission of forcible sodomy, specifically using his hand to touch Victim's genitals for the purpose of arousing or gratifying his sexual desire" (*Id.* at 7).  Petitioner does not present any evidence that these factual findings do no enjoy support in the record.  *Lomholt*, 327 F.3d at 752 (citing 28 U.S.C. § 2254(e)(1) (A state court's decision is based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings, as required to grant habeas relief under subsection (2), only if the petitioner shows by clear and

convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record.).  Here, Petitioner concedes that there is evidence, specifically the testimony of the Victim, that Petitioner tried to place his hand down the front of her skort.  The appellate court's determination that this was a substantial step toward the commission of forcible sodomy is not a contrary or unreasonable application of federal law.  Under Missouri law, attempt of an offense does not require an actual and specific attempt to perform each and every element of the crime nor does it require the ultimate step or the last possible act in the competition of the crime.  *State v. Davis*, 422 S.W.3d 458, 461 (Mo. Ct. App. 2014).  Under the facts of this case, as highlighted by the appellate court, Petitioner's failed attempt due to Victim's "considerable resistance" and intervention by police does not absolve him of responsibility (Doc. 13-5 at 7).

To the extent Petitioner briefly mentions that the jury was incorrectly instructed of the elements of attempted sodomy, the Court finds that such an argument is procedurally defaulted as Petitioner failed to properly raise the issue before the state courts (Doc. 1 at 7).  While Petitioner raised the issue before the appellate court, he did so within the argument for his substantial evidence claim, not as an independent ground in compliance with the state court's procedural rules.  *See* Missouri Supreme Court Rules 30.06, 84.04(d), (e) (requiring an appellant's brief to include a list of "points relied on," a brief statement of what actions or rulings of the trial court are sought to be reviewed).  Indeed, under Missouri law, the appellate court may disregard a claim raised for the first time in the argument section of the appellant's brief.  *Helmig v. State*, 42 S.W.3d 658, 666 (Mo. Ct. App. 2001) ("Rule 84.04(e) limits the argument portion of the brief to those errors included in the 'Points Relied On.' We determine only those questions stated in the points relied on."); *Dinwiddie v. State*, 905 S.W.2d 879, 881 (Mo. Ct. App. 1995)

("Errors raised for the first time in the argument portion of the brief that are not raised in the Point Relied On need not be addressed."). Therefore, Petitioner's failure to properly raise the issue before the state courts warrants dismissal based on procedural grounds. *Martinez,* 566 U.S. at 9 ("[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."); *McCauley v. Bowersox*, No. 4:13-CV-872 NAB, 2016 WL 5661612, at *3 (E.D. Mo. Sept. 30, 2016). However, even if the Court were to determine that the matter was properly before this Court, the Court would find the argument meritless. Errors describing the elements of an offense are properly addressed under a harmless-error standard. *See Neder v. United States,* 527 U.S. 1, 9 (1999) ("We have often applied harmless-error analysis to cases involving improper instructions on a single element of the offense."). *See also Smith v. Peart*, No. 4:13CV3173, 2014 WL 3510100, at *6 (D. Neb. July 14, 2014) (discussing Supreme Court precedent regarding the appropriate standard of review of jury instructions). "Accordingly, an error in jury instructions may be disregarded if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. Dvorak*, 617 F.3d 1017, 1025 (8th Cir. 2010) (internal quotation marks omitted). Applying this standard, the Court finds that any error in instructing the jury regarding attempted forcible sodomy is harmless error because, as addressed in detail above, "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder*, 527 U.S. at 15 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Accordingly, Ground 1 is denied.

**C. Ineffective Assistance of Trial Counsel**

Plaintiff additionally asserts that trial counsel provided him ineffective assistance for improperly advising Petitioner that he would receive the same sentence regardless whether he

entered a guilty plea or was convicted after trail (Doc. 1 at 9-11).  Specifically, Petitioner argues

that prior to trial, his lawyer advised him that it did not matter whether he was convicted after a

trial or entered a guilty plea because he would receive the same sentence (*Id.* at 9).  Petitioner

further asserts that trial counsel promised him that a sentence of probation was in the mix (*Id.*).

Petitioner argues that he was prejudiced by this erroneous advice because if trial counsel had

advised him that the odds of the jury acquitting him were "slim to none given the evidence" and

that he would have been facing a substantially larger sentence after a trial, he would have entered

a guilty plea (*Id.*).

In order to state a claim of ineffective assistance of trial counsel, Petitioner must

demonstrate that his counsel's performance was deficient and that he was prejudiced by that

performance.  *Strickland*, 466 U.S. at 687.  Deficient representation means counsel's conduct fell

below the conduct of a reasonably competent attorney.  *Id.*  To establish prejudice, Petitioner

must show "a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different."  *Id.* at 694.  Federal habeas review of a Strickland

claim is highly deferential, because "[t]he question is not whether a federal court believes the

state court's determination under the *Strickland* standard was incorrect but whether the

determination was unreasonable—a substantially higher threshold."  *Knowles v. Mirzayance*, 556

U.S. 111, 123 (2009) (internal quotations and citations omitted).

The motion court determined that Petitioner was not entitled to relief "[g]iven the

speculative nature of [Petitioner's] claim" (Doc. 13-6 at 35).  Specifically, the motion court

found that his claim "amounts to total speculation as to whether the Court would have accepted a

guilty plea" especially considering Petitioner did not allege the State made an offer (*Id.* at 34).

The motion court further found Petitioner's assertion that he would have accepted or entered a

blind plea and thus received a lesser total sentence to be "particularly speculative" in light of the sentence he did receive (*Id.*).  Petitioner was potential facing consecutive terms of life imprisonment and fifteen years but received a total of fifteen years (*Id.*).  The post-conviction appellate court affirmed the motion court's decision (Doc. 13-9).  In so doing, the post-conviction appellate court similarly found Petitioner's claim amounted to "mere speculation" (*Id.* at 6).  The post-conviction appellate court noted that Petitioner failed to allege the existence of a plea offer and thus could not properly allege that there was a reasonable probability that the court would have accepted the plea (*Id.*).  The post-conviction appellate court also found Petitioner failed to allege any facts in support of his suggestion that a blind plea would have resulted in a lower sentence than the fifteen years ultimately imposed by the Court (*Id.*).  Of note, the post-conviction appellate court stated: "Allowing defendants to allege ineffective counsel following unpursued plea options creates a potential windfall for defendants as they are awarded an opportunity to claim prejudice by a completely unexplored plea option only after an unfavorable result at trial" (*Id.* at 5).

The appellate court reasonably applied *Strickland* in concluding Petitioner did not receive ineffective assistance of counsel when he chose to go to trial instead of entering a blind plea. 466 U.S. 668.  The Supreme Court has addressed two specific narrow instances of attorney error in the context of plea bargaining: (1) failing to communication an existing offer to the defendant; and (2) providing bad advice about an existing offer.  *Missouri v. Frye*, 566 U.S. 134, 145 (2012); *Lafler v. Cooper*, 566 U.S. 156, 174 (2012).  Petitioner's allegations do not fall into either category.  Petitioner is not entitled to a plea offer or general advice about plea bargaining. *Ramirez v. United States*, 751 F.3d 604, 607-08 (8th Cir. 2014) (finding a defendant not entitled to relief when he received "at most an informal plea offer").  Further, Petitioner cannot establish

he was prejudiced by counsel's alleged failure to negotiate a plea deal or failure to advise

Petitioner to enter a blind plea because he has not show that the trial court would have accepted

such a deal especially in light of the possible range of punishment on all three charges.  As noted

by the post-conviction appellate court, the trial court could have sentenced Petitioner to life

consecutive to fifteen years imprisonment but, instead, sentenced him to fifteen years

imprisonment.  The appellate court's decision is not contrary to, nor does it involve, an

unreasonable application of federal law.  Therefore, the Court will deny Ground 2.

**D. Evidentiary Hearing**

Finally, Petitioner requests the Court grant him an evidentiary hearing in this case.  After

a brief mention requesting a hearing in his original petition, in his reply petition, Petitioner

suggests that an evidentiary hearing is integral to deciding each one of Petitioner's three grounds

for relief (*Compare* Doc. 1 at 16-17 *with* Doc. 18).  An evidentiary hearing on a habeas petition

is mandatory only if a petitioner was denied a "full and fair hearing in a state court, either at the

time of the trial or in a collateral proceeding." *Townsend v. Sain*, 372 U.S. 293, 312 (1963).  The

Court need not hold an evidentiary hearing if the petitioner fails to allege facts sufficient to

justify habeas relief. *Id.*  Upon careful consideration, the Court has determined that Petitioner's

claims do not entitle him to relief on the grounds asserted in his Petition.  The Court concludes

that no further evidentiary development is required for the resolution of Petitioner's grounds.

Furthermore, Petitioner fails to demonstrate that an evidentiary hearing is warranted under the

applicable standards set forth in 28 U.S.C. § 2254(e)(2).  Thus, Petitioner's request for an

evidentiary hearing will be denied.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief.  Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted).  Thus, the Court will not issue a certificate of appealability.  28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that Petitioner's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability will not be issued.  28 U.S.C. § 2253.

A separate Judgment shall be entered in accordance with this Memorandum and Order. Dated this 10th day of June, 2020.

   /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE